## Commonwealth v. Jones

*Frank A. Orban, Jr.,* for Commonwealth.

*Fike & Cascio,* for defendant.

SHEELY, P. J. (Specially Presiding), September 10, 1954.—Defendant was apprehended for speeding on the Pennsylvania Turnpike and was charged before H. S. Whipperman, a justice of the peace of Somerset

Borough. It is admitted that the Somerset interchange is the first exit on the turnpike from the point of the alleged violation but defendant contends that Mr. Whipperman is not the nearest justice of the peace to the exit and that, therefore, he was without jurisdiction to entertain the prosecution.

Under section 1201 of The Vehicle Code, as amended by the Act of August 19, 1953, P. L. 1084, 75 PS §731, it is provided that information charging violations of any of the summary provisions of the act occurring "upon any turnpike or highway under the supervision of the Pennsylvania Turnpike Commission . . . shall be brought before the available magistrate within the county where the alleged violation occurred who is nearest to the first exit from that part of the turnpike or highway where the alleged violation occurred".

This provision is an exception to the general provision of the code that such information shall be brought before the nearest available magistrate within the municipal subdivision where the alleged violation occurred. The provisions of section 1201 are mandatory and it is only through strict compliance with such provisions that jurisdiction is acquired: Commonwealth v. Gill, 166 Pa. Superior Ct. 223, 227 (1950). The question to be determined in this case is which of two magistrates is nearest "to the first exit from that part of the turnpike or highway where the alleged violation occurred" which, in turn, requires a determination of what is the "exit", or the point from which the measurement is to be made.

When the turnpike was constructed, the Turnpike Commission built a roadway from the turnpike at the Somerset interchange to connect with U. S. Route 219, which is North Center Avenue in the Borough of Somerset. This roadway was built on turnpike property and is maintained by the Turnpike Com-

mission. Mr. Whipperman's office is 703 feet from the intersection of this roadway with Route 219. Prior to the construction of the turnpike there was an unimproved borough street running westwardly from Route 219 and connecting with a public road in Somerset Township, which borough street was intersected by the new turnpike roadway. In order to avoid a right angle intersection at that point the Turnpike Commission reconstructed the township road so that it intersected the turnpike roadway at a point 167.5 feet south of the intersection of the borough street and the turnpike roadway.

After the 1953 amendment to section 1201 of The Vehicle Code, O. W. Hay, a justice of the peace of Somerset Township, which adjoins the borough, erected a small building along the township road above referred to where he conducts his justice of the peace business, and it is contended by defendant that his office is nearer to the "exit" than that of H. S. Whipperman. Defendant contends that the turnpike toll booth should be considered as the "exit" and submitted measurements from that point. To reach the office of Mr. Hay from the toll booth a motorist would go southwardly on the turnpike roadway 226.1 feet to the intersection of the township road and then northwestwardly on the township road 692.1 feet to the office, or a distance of 918.2 feet. To get to Mr. Whipperman's office from the toll booth the motorist would go southeastwardly on the turnpike roadway 1,399.1 feet to the intersection of the turnpike roadway with Route 219, and then southwardly on Route 219, 703 feet to the office, or a total distance of 2,102.1 feet. The distance from the toll booth to Mr. Whipperman's office via the unimproved borough street above referred to would be 2,715.7 feet.

We are convinced that the turnpike toll booth cannot be considered as the "exit" from the turnpike.

It is recalled that the toll booth at the original Valley Forge intersection was a substantial distance from the point at which a motorist could leave the actual turnpike. To hold that the toll booth marks the exit would mean that if a justice of the peace established his office just outside the fence opposite the toll booth he would be the nearest magistrate to that exit even though it might be necessary to travel several miles to reach his office and there might be another magistrate at the point where the motorist would actually leave the turnpike. The whole purpose of the amendment would thus be defeated.

The requirement of section 1201 that informations be laid before the nearest magistrate was enacted for several reasons. One was to prevent officers from showing favoritism to certain magistrates and another was for the convenience of the traveling public which might run afoul of the law. By having the information laid before the nearest magistrate the unhappy motorist could have the matter attended to with a minimum of travel and loss of time. This was the reason for the amendment of 1953 relating to the prosecutions for violations occurring on the turnpike and requiring that the information be laid before the available magistrate who is nearest to the first exit from that part of the turnpike where the alleged violation occurred.

When the legislature used the term "first exit" it was obviously referring to the first interchange at which the motorist could leave the turnpike so that the prosecution could be adjusted with a minimum of inconvenience to the motorist and without requiring him to drive many miles out of his way to the office of the magistrate who happened to be nearest to the point of the violation. The turnpike rules do not permit a motorist to leave the turnpike at any exit other than an interchange, and do not

permit a motorist to turn on the turnpike, and the "first exit from that part of the turnpike or highway where the alleged violation occurred" would be the first interchange at which a motorist in that traffic lane could leave the turnpike. In this connection, it is significant that the legislature did not use the term "nearest exit" which might have made it necessary to return to an interchange which had just been passed.

We think it is clear that the legislature used the world "exit" in a broad sense as designating the interchange and as including the entire system of roadways by which a motorist might leave the turnpike at that point. The motorist would not have left the turnpike until he was committed to a public road or street. Under section 3 of the Turnpike Act of May 21, 1937, P. L. 774, 36 PS §652(c), the words "the turnpike" are defined as including "all property rights, easements and franchises relating thereto and deemed necessary or convenient for the construction or the operation thereof.". Actually, in the present case, there are three points at which a motorist might leave the interchange, or turnpike property; the unimproved borough street; the township road; and the intersection of the turnpike roadway with Route 219; but they all constitute part of the interchange and part of the exit from the turnpike. The magistrate who would be nearest to the "exit", then, would be the one who was nearest to any of the points at which a motorist might leave the turnpike at that interchange.

Under this construction, the office of O. W. Hay, is 692.1 feet from the "exit" and the office of H. S. Whipperman is 703 feet from the "exit." Under section 1201, where there is no substantial difference between the respective distances from the exit from a turnpike to the offices of more than one magistrate,

the prosecution may be brought before any one of such magistrates. The difference between the respective distances in the present case not being substantial, the information •was properly laid before H. S. Whipperman.

The testimony of the police officer making the arrest as to the speed of defendant's vehicle was not disputed, and we must therefore adjudge defendant guilty.

### Order

And now, September 10, 1954, defendant's motion to dismiss the proceeding is denied, and the judgment of the court is that defendant is guilty. Defendant is directed to appear on September 20, 1954, at 9:30 a.m. for sentence unless prior to that time he voluntarily pays a fine of $10 for the use of the Township of Somerset and the cost of this proceeding.